## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. CHERYL McGEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-23-475-G |
| | ) | |
| 1. RYAN WALTERS, in his official capacity | ) | |
|     as Superintendent of Public Instruction, | ) | |
|     and in his individual capacity, and | ) | |
| | ) | |
| | ) | |
| 2.  MATT LANGSTON, in his official capacity | ) | |
|     as Chief Policy Advisor Administrative | ) | |
|     Services, and in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

---

### PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS BY THE DEFENDANTS IN THEIR OFFICIAL CAPACITY

---

### RESPECTFULLY SUBMITTED THIS 18TH DAY OF JULY 2023.

HAMMONS, HURST & ASSOCIATES

s/ Mark Hammons
Mark Hammons, OBA No. 3784
Amber L. Hurst, OBA No. 21231
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Katie@hammonslaw.com
amber@hammonslaw.com
*Counsel for Plaintiff*

## **TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS BY THE DEFENDANTS IN THEIR OFFICIAL CAPACITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     BACKGROUND OF THE DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PLAINTIFF HAS STANDING TO SEEK DECLARATORY RELIEF . . . . . . . 1

III.   DEFENDANTS HAVE ONLY A LIMITED IMMUNITY FROM SUIT . . . . . . 7

IV.    FIRST AMENDMENT RETALIATION MAY BE BASED ON A MISTAKEN BELIEF REGARDING THE EMPLOYEE'S SPEECH . . . . . . . . . . . . . . . . . . . . 9

V.     PLAINTIFF'S PERCEIVED SPEECH IS A MATTER OF PUBLIC CONCERN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.    LEAVE TO AMEND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT

*Carey v. Piphus*, 435 U.S. 247, 263-64 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Garcetti v. Ceballos*, 547 U.S. 410, 419-420 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

*Green v. Brennan*, 578 U.S. 547, 557-58 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Green v. Mansour*, 474 U.S. 64, 68 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016). . . . . . . . . . . . . . . . . . . . . . 9,10

*Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755-56 (1988). . . . . . . . . . . . . . . 15

*Lane v. Franks,* 573 U.S. 228, 236 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,12,13

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*NTEU*, 513 U.S., 467-69 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971) . . . . . . . . . . . . . . . . . 14

*Saia v. New York*, 334 U.S. 558, 560 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Primus,* 436 U.S. 412, 438 n.32 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*San Diego v. Roe*, 543 U. S. 77, 82, (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,12

*Sossamon v. Texas*, 563 U.S. 277, 299 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Nat'l Treasury Emples. Union ("NTEU")*, 513 U.S.(1995) . . . . . . . . 14

*Verizon Md. Inc. v. PSC*, 535 U.S. 635, 651 & fn. 3 (2002) . . . . . . . . . . . . . . . . . . . . . 8

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262-63 (1977) . . 7

## UNITED STATES COURTS OF APPEAL

*Asbill v. Hous. Auth. of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir. 1984) . . . . . 6

*Avant v. Doke*, No. 21-7031, 2022 U.S. App. LEXIS 17287, at *16, *19, 2022 WL 2255699 (10th Cir. June 23, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bird v. W. Valley City*, 832 F.3d 1188, 1212 (10th Cir. 2016) . . . . . . . . . . . . . . . . . . . . 10

*Brever v. Rockwell International Corp.*, 40 F. 3d 1119, 1131 (10th Cir. 1994) . . . . . .  16

*Canady v. J.B. Hunt Transport, Inc.*, 970 F.2d 710, 715 (10th Cir. 1992) . . . . . . . . . . 6

*Deutsch v. Jordan*, 618 F.3d 1093, 1100 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 12

*DG v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . 6

*Doe v. Hunter*, 796 F. App'x 532, 536 (10th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . 6

*Estate of Schultz v. Brown*, 846 F. App'x 689, 693 (10th Cir. 2021) . . . . . . . . . . . . . 5,6

*Harman v. City of N.Y.*, 140 F.3d 111, 117-18 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . 14

*Humanist Ass'n v. Douglas Cnty. Sch. Dist. Re-1*, 859 F.3d (10th Cir. 2017) . . . . . . . 6

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092-93 (10th Cir. 2006). . . . 2

*Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 4,5,7

*Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1316 (10th Cir. 2006) . . . . . .  6,11

*Moonin v. Tice*, 868 F.3d 853, 867 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nava v. City of Dublin*, 121 F.3d 453, 456-57 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . 4

*PeTA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 2,7

*Sanjour v. EPA*, 56 F.3d 85, 97, 312 U.S. App. D.C. 121 (D.C. Cir. 1995) . . . . . . . . 15

*Swartzwelder v. McNeilly*, 297 F.3d 228, 237-38 (3d Cir. 2002) . . . . . . . . . . . . . . . . 15

*Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) . . . . . . . . . . . . . . . . . 5

*Wernsing v. Thompson*, 423 F.3d 732, 743-44 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . 15

*Wolfe v. Barnhart*, 446 F.3d 1096, 1105-06 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . 15

*Yniguez v. Arizona*, 975 F.2d 646, 647 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 4

## UNITED STATES DISTRICT COURTS

*Radial Engines, Ltd. v. YRC Freight, Inc.*, No. CV-19-00841-PRW, 2021 U.S. Dist. LEXIS 31192, at *3 & n.26 (W.D. Okla. Feb. 19, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## FEDERAL STATUTES

28 U.S.C. § 2201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. CHERYL McGEE,                ) | |
|                         ) | |
|            Plaintiff,     ) | |
|                         ) | |
| v.                          ) | No. CIV-23-475-G |
|                         ) | |

1. CHERYL McGEE,                           )
                                           )
          Plaintiff,                       )
                                           )
v.                                         )          No. CIV-23-475-G
                                           )
1. RYAN WALTERS, in his official capacity  )
     as Superintendent of Public Instruction, )
     and in his individual capacity, and   )
                                           )
                                           )
2.  MATT LANGSTON, in his official capacity )
     as Chief Policy Advisor Administrative )
     Services, and in his individual capacity, )
                                           )
          Defendants.                      )

## PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS BY THE DEFENDANTS IN THEIR OFFICIAL CAPACITY

**COMES NOW THE PLAINTIFF**, Cheryl McGee, and in response to Defendants' motion to dismiss (Dkt # 7), shows this Court as follows:

## I. - BACKGROUND OF THE DISPUTE

Ms. McGee was an employee of the Oklahoma Department of Education who was terminated by the Defendants because they believed that she had given members of the Oklahoma news media a copy of an email threatening the employment of any person who provided information to the news media.

Ms. McGee brought this action to vindicate her First Amendment right against retaliation for speech on matters of public concern.

## II. - PLAINTIFF HAS STANDING TO SEEK DECLARATORY RELIEF

Defendants assert that Plaintiff lacks standing to bring (Count I) her claim seeking

-1-

declaratory relief.[1]

> To establish Article III standing, the plaintiff must show injury in fact, a causal relationship between the injury and the defendants' challenged acts, and a likelihood that a favorable decision will redress the injury. ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61 (1992). PeTA, as the party invoking federal jurisdiction, bears the burden of establishing the elements of standing. ***Id***. at 561.

***PeTA v. Rasmussen***, 298 F.3d 1198, 1202 (10th Cir. 2002).

Defendants do not dispute that Ms. McGee has suffered an injury nor do they dispute that there is "a causal relationship between the injury and defendants' challenged acts". ***Id***. While they dispute the public concern aspect of her claim, the sufficiency of the underlying constitutional claim is not part of the standing inquiry. ***Initiative & Referendum Inst. v. Walker***, 450 F.3d 1082, 1092-93 (10th Cir. 2006) (en banc) ("For purposes of standing, we must assume the Plaintiffs' claim has legal validity.").

Defendants' sole challenge is that a favorable decision will not redress the injury. Defendants theory is that McGee "is not a current employee [and] faces no chilling of speech or threatened employment." Defs' Mt, p. 2 (Prop. 1). Under this perverse theory, Defendants, by adopting an unconstitutional policy, and then firing Plaintiff under that policy, could deny Plaintiff standing to challenge the constitutionality of the policy.

That argument is flawed on several fundamental levels.

First, Defendants focus only on Plaintiff's ability to speak while ignoring her equal right to ***receive*** communications. In other words, the First Amendment protects not only the right to speak, but the right to hear others speak. In the public employee context, this was explained in ***Garcetti***:

> The Court's employee-speech jurisprudence protects, of course, the constitutional rights of public employees. *Yet the First Amendment interests*

---

[1] Plaintiff concedes that she cannot sustain a claim for injunctive relief as the termination has already occurred.

*at stake extend beyond the individual speaker. The Court has acknowledged the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion . . .San Diego v. Roe*, 543 U.S. 77, 82, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004) (per curiam) ('"Were [public employees] not able to speak on [the operation of their employers], *the community would be deprived of informed opinions on important public issues. The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it*' (citation omitted)); *cf. Treasury Emples.*, 513 U.S., at 470 ('*The large-scale disincentive to Government employees' expression also imposes a significant burden on the public's right to read and hear what the employees would otherwise have written and said*').

*Garcetti v. Ceballos*, 547 U.S. 410, 419-420 (2006).

Plaintiff's right to *receive information* is protected by the First Amendment and is as important on Plaintiff's right to speak. Thus, the termination from employment does not affect the on-going injury resulting from stifling the speech of other employees. A declaration of the unconstitutional nature of Defendant's gag order serves to vindicate Plaintiff's on-going right to receive uncensored information from Department of Education employees in the future. This represents exactly the kind of prospective relief contemplated by the most common form of declaratory relief. Thus, any requirement of future injury and the capacity for declaratory relief to remediate that injury is established.

Moreover, the continuing existence of damage injuries (both economic and non-economic) establishes standing.

The Declaratory Judgment statute, 28 U.S.C. § 2201(a) (emphasis supplied), provides that relief is proper even though other remedies (such as damages) are available:

In a case of actual controversy within its jurisdiction, . . . upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.* . .

Similarly, Fed.R.Civ.P. 57 admonishes: "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."

Consequently, courts have recognized that the existence of a damage action (such as

-3-

brought against the Defendants individually) will support declaratory relief if the basis for declaratory relief is factually intertwined with the damage claim. In some courts, "once a plaintiff establishes standing to seek damages, a court need not undertake a separate standing inquiry for equitable relief so long as the damages and equitable claims are predicated on the same operative facts and legal theories." *Nava v. City of Dublin*, 121 F.3d 453, 456-57 (9th Cir. 1997). *And see Yniguez v. Arizona*, 975 F.2d 646, 647 (9th Cir. 1992) ("A plaintiff's pursuit of nominal damages provides a sufficiently concrete interest in the outcome of the litigation to confer standing to pursue declaratory relief and thereby prevents mootness." (Quoted with approval in *F.E.R. v. Valdez*, 58 F.3d 1530, 1533 (10th Cir. 1995)). The Tenth Circuit appears to have adopted this reasoning in *Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006), quoted *infra*.

Contrary to Defendants argument, Defs' Mt, p. 2, the ability to secure a declaration of rights, particularly in conjunction with a damage claim, shows that her injuries can be redressed by the relief she seeks.

Additionally, Plaintiff bases her standing on *on-going* damages arising out of the First Amendment violation. On-going injury or continuing adverse effects are clearly sufficient to support declaratory judgment and defeat a claim of mootness:

> [P]laintiffs have standing to seek declaratory relief. A claim for 'declaratory judgment is generally prospective,' but we treat declaratory relief as retrospective 'to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred.' *PeTA v. Rasmussen*, 298 F.3d 1198, 1202 n.2 (10th Cir. 2002); *Faustin v. City & County of Denver*, 268 F.3d 942, 948 (10th Cir. 2001). Moreover, *plaintiffs' claim for declaratory relief is not moot where the district court must determine whether a past constitutional violation occurred which will in turn affect the parties' current rights or future behavior*. *Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997).
>
> Just as plaintiffs have standing to seek damages, they have standing to seek declaratory relief, and their claim is not moot. Throughout the entire litigation, the parties have disagreed whether the defendants violated the First Amendment in denying plaintiffs' parade permits, and plaintiffs sought damages for the City's denial of the parade permits. At the bench trial, the

district court had to determine whether a past constitutional violation occurred when defendants denied the parade permits. Even on appeal, a live controversy remains. Plaintiffs challenge the district court's denial of compensatory damages. Defendants challenge the district court's determination that Cole and Harlenske are liable pursuant to 42 U.S.C. § 1983. Thus, plaintiffs have standing to seek declaratory relief concerning denial of their parade permits in July 2001, and their claim is not moot.

*Lippoldt*, 468 F.3d, at 1217 (emphasis supplied).

Defendants are correct that Plaintiff's Complaint (Count I), seeks only prospective relief.  Complaint, ¶¶19 (Dkt #1).  *Lippoldt* explains that in the circumstance Plaintiff alleges, the normally prospective relief may also be deemed retrospective.  Of course declaring the unconstitutionality of the policy prospectively vindicates Plaintiff's First Amendment interest in receiving information.

Thus, while Plaintiff's declaratory relief claim should, perhaps, be read as seeking both prospective and retrospective declaratory relief, that would not support a motion to dismiss. As Judge Wyrick explained: "The Federal Rules of Civil Procedure 'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'"  *Radial Engines, Ltd. v. YRC Freight, Inc*., No. CV-19-00841-PRW, 2021 U.S. Dist. LEXIS 31192, at *3 & n.26 (W.D. Okla. Feb. 19, 2021) (Wyrick, J.) (Quoting  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014)).

As indicated, declaratory relief is justified in two circumstances: 1) a genuine threat of future injury, and 2) past violations with *continuing* injuries or adverse effects.  These are independent grounds for prospective relief as shown by the use of the disjunctive "or" in the controlling case law.  *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) ("To seek prospective relief, the plaintiff must be suffering  *a continuing injury* **or** be under a real and immediate threat of being injured in the future."  Emphasis supplied) and *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (declaratory relief supported by "continuing, present adverse effects."(quotation and alterations omitted)).  *Accord Estate of Schultz v.*

*Brown*, 846 F. App'x 689, 693 (10th Cir. 2021); *Doe v. Hunter*, 796 F. App'x 532, 536 (10th Cir. 2019); *Am. Humanist Ass'n v. Douglas Cnty. Sch. Dist. Re-1*, 859 F.3d 1243, 1250 (10th Cir. 2017), and *DG v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010), *inter alia*, all repeating *Tandy*'s disjunctive test for an injury sufficient to support prospective relief.

Plaintiff's pleadings tests in that she pleads that the effect of the policy is to satisfy this standard by alleging that Defendants' conduct is "a direct threat which would chill employees from the exercise of their First Amendment right." Complaint, ¶¶ 8-10, 20 (Dkt #1). [2] Plaintiff also pled a real and current controversy over the validity the policy. Complaint, ¶20 (Dkt #1). "on-going financial losses together with emotional distress".[3] Complaint, ¶ 26 (Dkt # 1). Plaintiff has asserted that her termination was caused by the policy she seeks to challenge, Complaint, ¶8 (Dkt #1), and that her termination under that policy caused her on-going economic injury. Complaint, ¶ 25 (Dkt #1). Her declaratory judgment challenge to Defendants' policy arises out of identical facts supporting her damage

---

[2] This pleading is not conclusory because Plaintiff pointed to express statement that "any employee found leaking information to the press will face immediate discharge." Complaint, ¶ 8. That is by definition designed to have a chilling effect on speech:
> We easily conclude that the prospect of losing wages, benefits, and ultimately a job would 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'
*Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1316 (10th Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

[3] Emotional distress damages are available in Sec. 1983 action. *Carey v. Piphus,* 435 U.S. 247, 263-64 (1978). "'It takes little foresight to acknowledge that a person whose employment is terminated is going to suffer mental anguish, embarrassment and even humiliation.'" *Canady v. J.B. Hunt Transport, Inc.*, 970 F.2d 710, 715 (10th Cir. 1992) (quoting *Williams v. ABS Enterprises, Inc.*, 1987 OK CIV APP 6, ¶ 7, 734 P.2d 854, 857).

claims, Complaint, ¶¶ 8, 11, 20, 24, which continue to cause her harm. Consequently, she meets the *PeTA*/*Lippoldt* test for declaratory relief.

Additionally, the termination itself is an injury extending well beyond the date of the termination. *See Green v. Brennan*, 578 U.S. 547, 557-58 (2016) ("termination [is] an additional adverse consequence that he may have to disclose in future job applications"), and *Asbill v. Hous. Auth. of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir. 1984) ("certainly, termination from employment constitutes a 'black mark' on any employee's resume.") On-going non-economic injury is also sufficient to support standing. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262-63 (1977) ("It has long been clear that economic injury is not the only kind of injury that can support a plaintiff's standing.")

**WHEREFORE**, Plaintiff has standing for declaratory relief particularly since the Defendants have not renounced or withdrawn the unlawful policy.

## III. - DEFENDANTS HAVE ONLY A LIMITED IMMUNITY FROM SUIT

Defendants assert (Mt., Prop. 2, p. 2-3) that the 11th Amendment bars declaratory judgment against the State.[4]   Whether viewed as prospective or retroactive relief, a declaration as to the constitutionality of a policy is not barred by the 11th Amendment Immunity.

As stated in the early case of *Ex parte Young*, 209 U.S. 123 (1908):

> [A] suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State. . . because an unconstitutional statute is void,, and therefore does not 'impart to [the official] any immunity from responsibility to the supreme authority of the United States.'

*Green v. Mansour*, 474 U.S. 64, 68 (1985) (Quoting *Ex parte Young*).

Admittedly, there had been confusion because some older cases seemed to bar

---

[4]  Defendants also make an inexplicable argument regarding Oklahoma's Governmental Tort Claims Act (OGTCA).  That Act, at least at present, has nothing to do with Plaintiff's claims.

retrospective declarations even when the cases did not implicate the expenditure of state funds.  It is now clear that immunity from declaratory relief is inapplicable "where the suit does not seek to bar a state authority from applying and enforcing **state law**, a request for declaratory or injunctive relief is simply a formality for obtaining a process of review."   In other words, a declaration as to *constitutionality* alone is not barred. ***Verizon Md. Inc. v. PSC***, 535 U.S. 635, 651 & fn. 3 (2002)(J. Souter, concurring) (emphasis supplied).  The ***Verizon*** concurrence explains and reconciles the apparent inconsistency in some the Court's holdings on the application of declaratory relief in favor of allowing the sort of relief sought by the Plaintiff here:

> [T]he State has a strong interest in any case where its adjudication of a federal question is challenged. An adverse ruling in one appeal can no doubt affect the state  commission's ruling in future cases. But this is true any time a state court decides a federal question and a successful appeal is made to this Court, and no one thinks that the Eleventh Amendment applies in that instance.

*Id*., 535 U.S., at 652.

Under Defendants' perverse reasoning, by taking an unconstitutional act (firing an employee in violation of the First Amendment), that very unlawful act would shield them from review of the constitutionality of their action.  This would be "a particularly curious reading" given the Supreme Court's "implicit acceptance of suits for injunctive and declaratory relief" against a State.  ***Sossamon v. Texas***, 563 U.S. 277, 299 (2011) (J. Sotomayor, dissenting on other grounds) (RLUIPA claim).

To explain more fully, Defendants conflate standing with immunity– the two concepts are very different.  As explained above, Plaintiff has standing regardless of whether the declaratory relief is considered prospective or retrospective.  As long as Plaintiff is suffering the adverse effects of the unconstitutional act, she has standing even if the policy no longer applied to her, however, the policy continues to injure her right, as a citizen, to receive information from Department of Education employees.

However, for 11th Amendment purposes the inquiry is slightly different.  Under the 11th Amendment, the question is whether there is a *continuing violation of federal law*.  If there is no continuing violation of federal law, then declaratory relief would not be available because the issue would be moot.  If the issue was moot, then the 11th Amendment immunity would be of no consequence and would not even be reached.  But Defendants do not claim they have abandoned the challenged policy or that the issue is moot.  As long as it exists, the policy is an on-going injury to the public under the First Amendment.  As pointed out above, "[t]he interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it." *San Diego v. Roe*, 543 U. S. 77, 82,  (2004) (per curiam).  *Accord Lane v. Franks,* 573 U.S. 228, 236 (2014) and the other cases cited *supra.*  Although Ms. McGee is no longer an employee, she is still a citizen adversely affected by policy.  Thus, declaratory relief is available prospectively to prevent the on-going constitutional violation to her from a still existent policy.

**WHEREFORE**, Defendants have no immunity for their violation of federal constitutional law.

### IV. - FIRST AMENDMENT RETALIATION MAY BE BASED ON A MISTAKEN BELIEF REGARDING THE EMPLOYEE'S SPEECH

Defendants argument (Mt, Prop. B(1), p. 3-4) is that "by pleading that she did not speak, Plaintiff fails to state a free speech claim."  *Id*., p. 4.  This argument is legally erroneous because liability for First Amendment retaliation is based on the employer's *motive* for action; not whether the employer was correct about the facts.  This was decided by *Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016):

> When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. §1983—even if, as here, the employer makes a factual mistake about the employee's behavior.

The Tenth Circuit applied *Heffernan* to the identical scenario presented here and held that a First Amendment retaliation claim was proper even though the employee had not actually "spoken". *See Bird v. W. Valley City*, 832 F.3d 1188, 1212 (10th Cir. 2016)

> The question naturally arises how far the Supreme Court's decision in *Heffernan* extends: does its holding apply to all First Amendment retaliation claims, or is it limited   only to situations where an employer demotes or discharges an employee? But that question can be answered another day. Here, *Heffernan* clearly governs Plaintiff's First Amendment retaliation claim, for Plaintiff was a public employee who claims her municipal employer discharged her based on its belief that she engaged in constitutionally protected activity. And undoubtedly, whether West Valley City officials actually believed Plaintiff leaked statements to the press is not at issue—both Mr. Davis and Mr. Morris admitted they held such a belief. Thus, as long as West Valley City officials fired Plaintiff based on this belief, then Plaintiff's denial that she was the source of these leaks is not fatal to her claim.

(Italics by counsel).

The law is so clear and well-established that it will defeat the claim of qualified immunity raised by Defendants. *See Avant v. Doke*, No. 21-7031, 2022 U.S. App. LEXIS 17287, at *16, *19, 2022 WL 2255699 (10th Cir. June 23, 2022) (affirming denial of qualified immunity):

> The district court addressed and the parties have adequately briefed one issue relating to prongs one and two of qualified immunity that we can resolve: whether *Heffernan* and *Bird* recognize a First Amendment right against retaliation for perceived speech. We hold these cases not only recognize a right but also that the right is clearly established.
>
> *        *        *
>
> . . . Although Mr. Avant said at his deposition that he did not make any of the comments attributed to him, when Commissioner Doke fired him, he believed Mr. Avant made the comments. Under *Heffernan*, his belief matters. We thus see no basis to distinguish this case from *Bird*. We conclude that a right to be free of retaliation for perceived speech was clearly established when Commissioner Doke fired Mr. Avant in November 2018. We affirm the March 23 and May 18 orders to the extent they hold that *Heffernan* and *Bird* clearly establish a First Amendment right applicable to Mr. Avant's free speech claim.

**WHEREFORE**, Defendants' argument is foreclosed by controlling law.

-10-

## V. - PLAINTIFF'S PERCEIVED SPEECH IS A MATTER OF PUBLIC CONCERN

Defendants (Mt, Prop. B(2), p. 5-6) challenge Ms. McGee's First Amendment claim by asserting that her perceived disclosure of Defendants' gag order on Department of Education employees is not a matter of public concern. Defendants argue that Plaintiff "fails to plead. . . that the media policy itself was a First Amendment violation", *Id*, p.5, although they simultaneously admit that "[s]he pleads that she was fired for violating the agency's medial policy." *Id*. Plaintiff pled that the email setting out the policy "was a direct threat which would chill employees from the exercise of their First Amendment rights,[5] [and] an unlawful prior restraint on speech which . . . is overly broad and all-inclusive". Complaint, ¶¶ 20-21 (Dkt # 1). She also pled that "Plaintiff's termination was the direct result of supposedly violating Defendants' prohibition against sharing internal communications with members of the press." *Id*., ¶ 24. This plainly sets out that the "media policy" was violative of First Amendment rights. Though no clarification is necessary, were a clarification required it could easily be done by amendment.

Next, Defendants seek to raise a red-herring regarding the Plaintiff's motive. Mt, p. 6. Defendants claim that Plaintiff's challenge is to "Defendant Langston's tone" and that "the tone of the spokesperson [is not] a matter of public concern [but rather] a personal grievance". This is not all what Plaintiff pled nor can that be inferred from the pleading. To the contrary, Defendants have accepted Plaintiff's assertion that she did not actually speak, which necessarily means that she had no personal motive which would overwhelm

---

[5] There can be no dispute that threatening to fire an employee chills speech:
. . .We easily conclude that the prospect of losing wages, benefits, and ultimately a job would 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'
*Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1316 (10th Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).

the public concern test.  The Court may not infer a motive issue that is not only unpled, but which is inconsistent with the pleading.  Rather, the court is  "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).  Defendants seek to raise a defense which does not appear from the pleadings.[6]

The main thrust of Defendants' argument is that the media policy limiting communications with the press is not a matter of public concern.  In so arguing, Defendants fail to credit the broad sweep of the 'public concern' doctrine:

> Speech involves matters of public concern 'when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."' *Snyder v. Phelps*, 562 U. S. 443, 453 (2011) (citation omitted).

*Lane v. Franks,* 573 U.S. 228, 241 (2014). *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004) (Matter was because it "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.")

The newsworthiness of the email is enough to show that this subject is one of public concern.  Court can take judicial notice of the wide-spread and intense new interest in

---

[6] Plaintiff's only reference to motive is her assertion that the  motive of Langston and Walters which "was to intimidate and chill the First Amendment rights of employees".  Complaint, ¶ 10 (Dkt # 1).  Thus, Plaintiff placed at issue the Defendants' motive; not her motive.

In any event, "[n]ormally the purpose or motive of the speaker is not central to First Amendment protection".  *In re Primus,* 436 U.S. 412, 438 n.32 (1978).  Further, *Deutsch v. Jordan*, 618 F.3d 1093, 1100 (10th Cir. 2010) explains that even where a personal motive is present, that is not an automatic bar to protection:

> But the speaker's having a highly personal motive for a disclosure does not necessarily mean that the speech is not a matter of public concern. Whistle blowers may often bear personal grudges. Some subject matter is so imbued with the public interest that speech regarding it will almost always be a matter of public concern, whatever the context.

Defendants threats to fire employees who talked to the news media.[7]  Were it necessary to plead this basis to satisfy the public concern test, Plaintiff should be granted leave to make such an amendment.

Apart from the public interest and news coverage, the disclosure of this policy is simply not a matter of purely internal concern that does not "affect any member of the public outside the agency."  Defs' Mt, p. 5.  Defendants' position disregards not only the rights of employees, but also the paramount interests of the public in receiving information.

> There is considerable value, moreover, in encouraging, rather than inhibiting, speech by public employees. For '[g]overnment employees are often in the best position to know what ails the agencies for which they work.' ***Waters v. Churchill***, 511 U. S. 661, 674 (1994) (plurality opinion). 'The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it.' ***San Diego v. Roe***, 543 U. S. 77, 82, (2004) (per curiam).

***Lane v. Franks,*** 573 U.S. 228, 236 (2014).

The Supreme Court in ***Lane*** took pains to explain the importance to society of furthering the speech of government employees:

> In ***Pickering,*** for example, the Court observed that '[t]eachers are . . . the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.' 391 U. S., at 572; ***see also Garcetti***, 547 U. S., at 421 (recognizing that '[t]he same is true of many other categories of public employees'). Most recently, in ***San Diego v. Roe***, 543 U. S., at 80, 125, the Court again observed that public employees 'are uniquely qualified to comment' on 'matters concerning government policies that are of interest to the public at large.'

***Lane***, 573 U.S., at 240.

Ms. McGee's perceived offense and the reason for her termination was disclosing a

---

[7]  ***See*** Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; . . .").

Department of Education "gag order" on its employees.[8]  That gag order– particularly as a prior restraint– is a matter of public concern because it restrains the sources of information available to the public.  "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."  ***Neb. Press Ass'n v. Stuart***, 427 U.S. 539, 559 (1976).  "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity."  ***Org. for a Better Austin v. Keefe***, 402 U.S. 415, 419-20 (1971).   "[U]nlike an adverse action taken in response to actual speech, [a prior restraint] chills potential speech before it happens." ***United States v. Nat'l Treasury Emples. Union ("NTEU")***, 513 U.S. 454, 468 (1995). This applies to prior restraints on employee speaking to outside groups. ***NTEU***, 513 U.S., 467-69 (1995) (A "prohibition on compensation [for employee speech] unquestionably imposes a significant burden on expressive activity.") In ***Harman v. City of N.Y.***, 140 F.3d 111, 117-18 (2d Cir. 1998), employees of social service agencies needed to obtain permission before talking to the media about the agency:

> This burden is particularly heavy where, as here, the issue is not an isolated disciplinary action taken in response to one employee's speech, but is, instead, a blanket policy designed to restrict expression by a large number of potential speakers. To justify this kind of prospective regulation, 'the Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government.' ***NTEU***, 513 U.S. at 468 (quoting ***Pickering***, 391 U.S. at 571).

***Id.***, 140 F.3d, at 118.

This rule has been adopted by the Tenth Circuit:

---

[8]  Defendants erroneously assert that Plaintiff "does not plead that either Defendant violated anyone else's First Amendment rights."  Mt, p. 6.  Au contraire, a prior restraint violates the rights of every person subject to the restraint.  And, Plaintiff pled that the Defendants' purpose "was to intimidate and chill the First Amendment rights of employees."  Complaint, ¶¶ 10, 20-22 (Dkt # 1).

A number of other circuits have concluded that the *NTEU* analysis applies to restrictions on employee speech that are imposed through such a generally applicable policy, rather than a post hoc case-by-case disciplinary process. **See Crue v. Aiken**, 370 F.3d 668, 678 (7th Cir. 2004) (applying *NTEU* to university directive requiring faculty and students to obtain advance permission to contact prospective student athletes regarding school mascot); *Swartzwelder v. McNeilly*, 297 F.3d 228, 235 (3d Cir. 2002) (applying NTEU to police bureau policy requiring officers to obtain advance authorization before giving expert testimony in court proceedings); *Harman v. City of New York*, 140 F.3d 111, 118 (2d Cir. 1998) (applying *NTEU* to policies requiring employees to obtain advance permission before speaking to media); *Sanjour I*, 56 F.3d at 91 (applying *NTEU* to travel expense reimbursement restrictions set forth in regulations). In accord with those decisions, we agree with Wolfe that *NTEU*'s modification of the *Pickering* balancing test applies under these circumstances. . .

*Wolfe v. Barnhart*, 446 F.3d 1096, 1105-06 (10th Cir. 2006).  *Also see Wernsing v. Thompson*, 423 F.3d 732, 743-44 (7th Cir. 2005):

> [T]he Supreme Court and this Court have held that government policies placing prior restraints on employee speech may be challenged facially. That is, government employees whose speech is limited by an internal policy or a pre-clearance directive such as Thompson's need not seek permission to speak or violate the directive in order to challenge the directive in court.

*Wernsing v. Thompson*, 423 F.3d 732, 743-44 (7th Cir. 2005).  *See also Swartzwelder v. McNeilly*, 297 F.3d 228, 237-38 (3d Cir. 2002) (prior restraint on court appearance invalid); *Moonin v. Tice*, 868 F.3d 853, 867 (9th Cir. 2017) ("[U]nbounded discretion as to [approval of the communication's] substance raises the specter of arbitrary or viewpoint-discriminatory enforcement."); *Sanjour v. EPA*, 56 F.3d 85, 97, 312 U.S. App. D.C. 121 (D.C. Cir. 1995) (en banc) (acknowledging this concern in striking down a regulation affecting employee speech), *inter alia*.

Because the restraint extends to *all* communications, it is overly broad rather than narrowly tailored.  Indeed, one primary fault of prior restraints is leaving enforcement to the unbridled discretion of some official.  *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755-56 (1988) (In a licensing context "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one

who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.") And it is also clear that an overly broad prior restraint is not saved because a more narrowly drawn restraint would have been constitutional.  ***See Saia v. New York***, 334 U.S. 558, 560 (1948):

> We hold that . . . this ordinance is unconstitutional on its face, for it established a prior restraint on the right of free speech in violation of the First Amendment. . . To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted.

Clearly, there is a public concern both as to government employee speech and on the issue of prior restraints on such speech.

**WHEREFORE**, the public concern test is met both by the newsworthiness of the issue and because the subject itself affects First Amendment concerns of not only employees but the public.

## VI. - LEAVE TO AMEND

Defendants' suggest in their "Conclusion", pg. 6, that the Court deny leave to amend if any pleading deficiencies are found.  While Plaintiff does not believe any pleading deficiencies exist which require amendment, it is clear that additional facts could be plead. As pointed out on the public concern issue, were this court to decline to take notice of the widespread news coverage of Defendants' attempted gag order, the fact of such coverage could easily be pled.  The bottom-line is, Defendants' request is contrary to the settled standards on a motion to dismiss.  "[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."  ***Brever v. Rockwell International Corp.***, 40 F. 3d 1119, 1131 (10th Cir. 1994) (quotation omitted).

-16-

## CONCLUSION

Defendants' motion must be denied in its entirety.

**RESPECTFULLY SUBMITTED THIS 18th DAY OF JULY 2023.**

HAMMONS HURST & ASSOCIATES

s/ Mark Hammons
Mark Hammons, OBA No. 3784
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-6100
Facsimile:  (405) 235-6111
Email: katie@hammonslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service on each of Defendants' counsel below listed on July 18th, 2023:

Bryan Cleveland
Oklahoma State Dept of Edu
2500 N. Lincoln Blvd.
Oklahoma City, OK 73105
Ph:     (405) 522-2424
Email: byan.cleveland@sde.ok.gov
Attorney for Defendants in their
       official capacity

Scott M. McElhaney
JACKSON WALKER, LLP
2323 Ross Ave., Suite 600
          Dallas, Texas 75201
Ph:     214-953-6147
Fax:    214-661-6672
Email: smcelhaney@jw.com

Attorney for Defendants in their
       individual capacity

S/Mark Hammons