UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHERYL MCGEE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-23-475-G |
| | ) |
| RYAN WALTERS et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

Plaintiff Cheryl McGee herein brings claims for wrongful and retaliatory termination in violation of the First Amendment, pursuant to 42 U.S.C. § 1983, against Defendant Ryan Walters and Defendant Matt Langston, in both their official and individual capacities. *See* Compl. (Doc. No. 1).

Defendants have jointly filed a Motion to Dismiss the official-capacity claims (Doc. No. 7) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded (Doc. No. 12), and Defendants have replied (Doc. No. 19). Defendants also have jointly filed a Rule 12(b)(6) Motion to Dismiss the individual-capacity claims (Doc. No. 9). Plaintiff has filed a Response (Doc. No. 13), and Defendants have filed a Reply (Doc. No. 18). Accordingly, both motions are at issue.

I.    *Summary of the Pleadings*

In the Complaint, Plaintiff alleges the following facts:

Plaintiff was employed by the Oklahoma State Department of Education ("OSDE") as Executive Director of School Based Mental Health from August of 2019 until she was terminated on May 25, 2023. Compl. ¶ 5 (Doc. No. 1). Defendant Walters is

Superintendent of Public Instruction for the State of Oklahoma. *Id.* ¶ 2(A). Defendant Langston is the Chief Policy Advisor of Administrative Services for OSDE. *Id.* ¶ 2(B).

On May 25, 2023, Defendant Walters caused an email to be sent threatening all OSDE employees with termination if any employee "leaked" internal documents to the press. *Id.* ¶ 8. The email closed by stating: "To recap, any employee found leaking information to the press will face immediate termination." *Id.* The email was prepared and signed by Defendant Langston. *Id.* Defendant Langston publicly stated that he prepared this email (the "Keep Quiet Email") in a format that would allow him to trap employees who shared the email to the press or to other third parties. *Id.* ¶ 9.

According to Plaintiff, there were two purposes for the Keep Quiet Email. *See id.* ¶ 10. The first was to intimidate and chill the First Amendment rights of employees. *Id.* ¶¶ 10, 19 (describing the email as "a direct threat"). The second was to retaliate against employees who shared information about matters of public concern in the OSDE with members of the press or outside officials. *Id.* ¶ 10.

On May 25, 2023, Defendant Walters terminated Plaintiff's employment for the reason that Plaintiff had supposedly shared confidential information (the Keep Quiet Email) with the press. *Id.* ¶ 11. The letter terminating Plaintiff's employment read:

> We regret to inform you that your employment with the Oklahoma State Department of Education (OSDE) is being terminated immediately. This decision[] has been made due to a breach of confidentiality by leaking internal agency emails to the media.
>
> Our media[] policy clearly outlines employees should not engage with the media directly but instead redirect inquiries to the designated press secretary. Despite these clear guidelines and a prior email communication explicitly stating the leaking agency emails would result in termination, we have

confirmed that you have violated these policies by disclosing internal agency emails to the press without authorization.

*Id.*

Defendant Walters is the sole decisionmaker regarding the hiring and firing of OSDE employees. *Id.* ¶¶ 6, 18. Defendant Langston also "directly and personally participated in" Plaintiff's termination by "devising and setting up an email trap to find employees who disseminated information to persons outside [OSDE]" and "by personally threatening the termination of any employee who violated this policy." *Id.* ¶ 18.

II. Discussion

A. *Plaintiff's Claims Against Defendants in Their Official Capacities*

In Count One, Plaintiff seeks prospective declaratory and equitable relief against both Defendants in their official capacities. *See id.* ¶¶ 19-22. Specifically, Plaintiff requests that the Court declare the Keep Quiet Email "an unlawful and overly broad restraint on the First Amendment rights" of OSDE employees and "prospectively enjoin . . . Defendants from future enforcement of the policies described therein." *Id.* at 4-5.[1]

Defendants seek dismissal of Count One for lack of subject-matter jurisdiction, arguing in relevant part that Plaintiff lacks Article III standing to pursue these claims. *See* Defs.' O-C Mot. (Doc. No. 7) at 1-2; Defs.' O-C Reply (Doc. No. 19) at 2-5. In response, Plaintiff concedes that her request for injunctive relief cannot be sustained but maintains

---

[1] Under *Ex parte Young*, "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

3

that the claim for declaratory relief is properly before the Court. *See* Pl.'s O-C Resp. (Doc. No. 12) at 6-11, 6 n.1.

### 1. Relevant Standard

A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). Here, Defendants make a facial attack on the sufficiency of the allegations contained in the Complaint. *See* Defs.' O-C Mot. at 1-2. In reviewing a facial attack, a district court confines its analysis to the pleadings and must accept the allegations in the complaint as true. *See Pueblo of Jemez*, 790 F.3d at 1148 n.4. As the party asserting federal jurisdiction, Plaintiff bears "the burden of alleging the facts essential to show jurisdiction." *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002) (internal quotation marks omitted).

### 2. Analysis

"Article III of the United States Constitution only extends federal judicial power to cases or controversies." *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000). "Article III standing is a jurisdictional requirement for a plaintiff to plead and prove, and a lack of standing may be challenged by a motion under Rule 12(b)(1)." *Altstatt v. Bd. of Cnty. Comm'rs for Okla. Cnty.*, No. CIV-22-811-D, 2023 WL 6208550, at *2 (W.D. Okla. Sept. 22, 2023). To have standing to sue, a plaintiff must properly allege: (1) it "ha[s] suffered an injury in fact—an invasion of a legally protected interest"—"that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury

is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted); *New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008).

Defendants assert that Plaintiff's claim for prospective declaratory relief fails to establish injury or redressability for standing purposes because the request is directed at remedying harms faced by current OSDE employees, and Plaintiff is not such an employee. The Court agrees.

Plaintiff alleges in relevant part that the Keep Quiet Email "would chill employees from the exercise of their First Amendment rights" and "threaten[] the employment of persons with [OSDE]." Compl. ¶¶ 20-21. Plaintiff, however, is no longer an OSDE employee and thus is not so threatened or chilled. It follows that Plaintiff has not sufficiently alleged an injury to herself that is likely to be redressed by the requested declaratory relief—i.e., a declaration that the Keep Quiet Email is unlawful as to OSDE "employees." Compl. at 4-5; *see Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976) ("[W]hen a plaintiff's standing is brought into issue the relevant inquiry is whether . . . the plaintiff has shown an injury *to himself* that is likely to be redressed by a favorable decision." (emphasis added)); *cf. V-1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1422 (10th Cir. 1997) ("[T]he Eleventh Amendment does not permit judgments against state officers declaring they violated federal law in the past." (internal quotation marks omitted)).

5

Plaintiff objects that Defendants ignore the potential injury caused by Defendants' "gag order" to "Plaintiff's on-going right to receive uncensored information from [OSDE] employees in the future" Pl.'s O-C Resp. at 12.  But Count One, even if accepted as true, does not plausibly allege a claim premised upon the violation of such a right of a member of the public to receive information from an employee.  *See* Compl. ¶¶ 19-22.  The Court may not "declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green*, 159 U.S. 651, 653 (1895).

Plaintiff also cites the damages claims raised in Count Two as a basis for allowing the declaratory-judgment claim to stand.  While entirely plausible that Plaintiff could seek some type of declaratory relief in connection with her Count Two claims, Plaintiff may not obtain relief for her termination in the form of a judgment stating that OSDE's policy is currently chilling the speech of other persons who remain OSDE employees.  "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Plaintiff's official-capacity claims therefore shall be dismissed for lack of subject-matter jurisdiction pursuant Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B.  *Plaintiff's Claims Against Defendants in Their Individual Capacities*

In Count Two, Plaintiff seeks actual and punitive damages against Defendants in their individual capacities based upon her unlawful termination from OSDE.  *See* Compl. ¶¶ 23-26.  Plaintiff alleges that her termination, which "was the direct result of supposedly violating Defendants' prohibition against sharing internal communications with members

6

of the press," violated Plaintiff's rights under the First Amendment. *Id.* ¶ 24. Citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants argue that they are entitled to qualified immunity on Count Two. *See* Defs.' I-C Mot. at 3-7.

   1. *Relevant Standard*

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

*2. Analysis*

Defendants argue that they are entitled to qualified immunity on Plaintiff's First Amendment claims. "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012) (internal quotation marks omitted).

While a defendant may assert the defense of qualified immunity in a motion to dismiss, doing so "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). "At [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis omitted). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*,

487 U.S. 42, 48 (1988). Here, Defendants do not dispute that they were acting under color of state law in connection with Plaintiff's termination from her position as Executive Director of School Based Mental Health. Defendants' challenge is broadly aimed at whether Plaintiff can show that, in terminating Plaintiff, Defendants "subject[ed]" Plaintiff, "or cause[d] [Plaintiff] to be subjected," "to a deprivation of . . . her lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

The First Amendment "forbids abridgment of the freedom of speech." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 585 U.S. 878, 891-92 (2018). A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Mvers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee free-speech cases. *Leverington*, 643 F.3d at 724 (explaining that "after *Garcetti*, it is apparent that the *Pickering* analysis of freedom of speech retaliation claims is a five step inquiry" that will be referred to as "the

9

*Garcetti*/*Pickering* analysis" (internal quotation marks omitted)).  The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (internal quotation marks omitted).  "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury."  *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

### a. Whether Plaintiff Adequately Alleged Protected Speech

Defendants first assert that Plaintiff has not sufficiently presented an instance of speech by a public employee, so as to implicate the *Garcetti/Pickering* analysis, because the Complaint alleges that Plaintiff was terminated based upon Defendants' belief that Plaintiff shared the Keep Quiet Email, rather than affirmatively pleading that Plaintiff engaged in protected speech by disseminating the email.  *See* Defs.' I-C Mot. at 5-6.

The Tenth Circuit "recognize[s] a First Amendment right against retaliation for perceived speech."  *Avant v. Doke*, No. 21-7031, 2022 WL 2255699, at *6 (10th Cir. June 23, 2022).  As explained by the Tenth Circuit, what matters is not whether the employer "'ma[de] a factual mistake'" in believing that the public employee engaged in constitutionally protected activity, but only whether the employer held such a belief when demoting or terminating the employee.  *Bird v. W. Valley City*, 832 F.3d 1188, 1212 (10th

10

Cir. 2016) (emphasis omitted) (quoting *Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016)).

Here, Plaintiff has adequately alleged that Defendants' motive for termination was "a desire to prevent [Plaintiff] from engaging in" allegedly protected speech. *Heffernan*, 578 U.S. at 273. Dismissal is not warranted on this basis.

### b. *Whether the Speech Was on a Matter of Public Concern*

Defendants next argue that Plaintiff fails to plausibly allege that the perceived disclosure of the Keep Quiet Email implicated "a matter of public concern," as required to be entitled to First Amendment protection. *Eisenhour*, 744 F.3d at 1227 (internal quotation marks omitted); *see* Defs.' I-C Mot. at 6-7.

To adequately plead this element, Plaintiff must allege that her speech "involve[d] a matter of public concern and not merely a personal issue internal to the workplace." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995).

> Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The inquiry turns on the "content, form, and context" of the speech.

*Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Connick*, 461 U.S. at 147). Courts also consider the motive of the speaker: "[w]as the speech calculated to redress personal grievances or did it have some broader public purpose?" *Eisenhour*, 744 F.3d at 1228.

As noted above, Plaintiff alleges that she was terminated for purportedly forwarding Defendants' May 25, 2023 email, which threatened all OSDE employees with termination if they "leaked" internal documents to the press. Compl. ¶ 8 ("To recap, any employee

11

found leaking information to the press will face immediate termination."). Defendants argue that the Keep Quiet Email was merely "provid[ing] clarification on [OSDE's] media[] policy" and such policies are not "of interest to the community." Defs.' I-C Mot. at 7. Plaintiff, however, contends that it is "the nature of the policy" that determines whether it is of public concern. Pl.'s I-C Resp. at 4 (asserting there was "wide-spread and intense news interest in Defendants' threats to fire employees who talked to the news media"). Plaintiff additionally alleges that OSDE "is a public, constitutional agency of the State of Oklahoma," "charged with advancing education of students in the State of Oklahoma." *Id.* ¶ 13.

At this early pleading stage, the Court is unable to, and need not, definitively identify the "content, form, and context" of the Keep Quiet Email or ascertain Plaintiff's motive for transmission (if so transmitted). *Connick*, 461 U.S. at 147; *see Eisenhour*, 744 F.3d at 1228. Construed in Plaintiff's favor, the Complaint's allegations plausibly reflect that Plaintiff's perceived distribution of the email constituted speech relating to a concern to the community and/or "a subject of legitimate news interest," involving more than a personal grievance or "a routine intraoffice communication." *Lane*, 573 U.S. at 241 (internal quotation marks omitted); Defs.' I-C Reply at 5; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Plaintiff therefore has adequately pleaded that her protected speech involved a matter of public concern for purposes of the *Garcetti/Pickering* analysis.

*c. Conclusion*

Defendants' assertion of qualified immunity rests upon their contentions of inadequate pleading addressed above. But as set forth herein, "the facts that [Plaintiff] has alleged" do "make out a violation of a constitutional right." *Keith*, 707 F.3d at 1188 (internal quotation marks omitted). Further, from the authorities cited above it is clear that this First Amendment right was clearly established at the time of Plaintiff's termination in May 2023. *See supra*; *Avant*, 2022 WL 2255699, at *6-7 (holding that *Heffernan* and *Bird* clearly establish a First Amendment right against retaliation for perceived speech). Dismissal of these claims is not warranted on this basis.[2]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 7) is GRANTED. The claims raised against Defendants in their official capacities by Count One of the Complaint are DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (Doc. No. 9) is DENIED. Plaintiff's 42 U.S.C. § 1983 claims raised against Defendants in their individual capacities for violation of the First Amendment remain pending.

---

[2] This finding "does not foreclose Defendants from reasserting their entitlement to qualified immunity on a motion for summary judg[]ment should [Plaintiff's] allegations in the complaint prove to be unfounded." *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996) (reversing a grant of qualified immunity on a motion to dismiss where it was "premature, absent a factual record"). The Court makes no finding at this stage as to whether Defendants will be able to show entitlement to qualified immunity when Plaintiff "can no longer rest on the pleadings." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted).


IT IS SO ORDERED this 12th day of August, 2024.

CHARLES B. GOODWIN
United States District Judge

14