IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHERYL MCGEE,

      *Plaintiff*,

v.

RYAN WALTERS,
in his individual capacity, and

MATT LANGSTON,
in his individual capacity,

      *Defendants*.

Case No. 5:23-cv-00475-G

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

---

**Joel L. Wohlgemuth**, OBA #9811
**Chad J. Kutmas**, OBA #19505
**W. Caleb Jones**, OBA #33541
**NORMAN WOHLGEMUTH, LLP**
401 S. Boston Avenue
Suite 3200 Mid-Continent Building
Tulsa, OK  74103
(918) 583-7571 (Telephone)
(918) 584-7846 (Facsímile)
JWohlgemuth@NWLawOK.com
CKutmas@NWLawOK.com
WJones@NWLawOK.com

**ATTORNEYS FOR RYAN WALTERS
AND MATT LANGSTON**

January 2, 2026

**TABLE OF CONTENTS**

**Page(s)**

**INTRODUCTION**.................................................................................................... 1

**SUMMARY JUDGMENT STANDARD** .................................................................. 2

**STATEMENT OF UNDISPUTED MATERIALS FACTS** ...................................... 4

**ARGUMENT AND AUTHORITIES**....................................................................... 4

    **I.**    **Individual Liability Requires Personal Participation, which is Absent.** ................... 5

        A.  Defendants Were Not Personally Involved in Plaintiff's Termination....................... 6

        B.  Defendants Did Not Cause Plaintiff's Termination. .................................................. 7

        C.  Defendants lacked Any Culpable State of Mind. ....................................................... 8

    **II.**  **Plaintiff Did Not Engage in Protected Speech.**....................................................... 10

    **III.**  **Plaintiff's Voluntary Resignation Before Any Termination Precludes**......................
          **Her Claim.** ............................................................................................................. 13

    **IV.**  **Defendants are Entitled to Qualified Immunity.** ....................................................... 14

        A.  No Constitutional Violation Occurred. ....................................................................... 15

        B.  No Clearly Established Law was Violated.................................................................... 15

        C.  Defendants lacked Any Culpable State of Mind. ....................................................... 8

**CONCLUSION** ........................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adams v. American Guarantee & Liability Ins. Co.,*
    233 F.3d 1242 (10th Cir. 2000) ....................................................................3

*Allen v. Salt Lake County,*
    713 F.Supp.3d 1171 (D. Utah 2024)..........................................................12

*Avant v. Doke,*
    No. 21-7031, 2022 WL 2255699, at *6 (10th Cir. June 23, 2022) ....................15

*Avant v. Doke,*
    104 F.4th 204 (10th Cir. 2024) ..................................................................16

*Baca v. Sklar,*
    398 F.3d 1210, 1220 (10th Cir. 2005) ...............................................13, 14

*Belcher v. City of McAlester,*
    324 F.3d 1203 (10th Cir. 2005) ................................................................13

*Berry v. City of Muskogee, Oklahoma,*
    900 F.3d 1489 (10th Cir. 1990) ..................................................................6

*Bointy v. Oklahoma,*
    No. CIV-23-1002-SLP, 2025 U.S. Dist. LEXIS 118441, at *3 (W.D. Okla.
    June 23, 2025).........................................................................................7, 9

*Carabajal v. City of Cheyenne,*
    847 F.3d 1203 (10th Cir. 2017) ................................................................15

*Castillo v. Bobelu,*
    1 F. Supp. 3d 1190 (W.D. Okla. 2014) .......................................................6

*City & Cty. of San Francisco, Calif. v. Sheehan,*
    575 U.S. 600 (2015).................................................................................16

*City of Canton v. Harris,*
    489 U.S. 378 (1989).................................................................................8

*Conner v. Reinhard,*
    847 F.2d 384 (7th Cir. 1988) ....................................................................7

*Cortez v. McCauley,*
    748 F.3d 1108 (10th Cir 2007) ..................................................................3

*Daughtery v. Richardson,*
    No. CV 98-1573 JP/LFG, 2000 WL 36739572, at *9 (D.N.M. Dec. 5, 2000)................14

*Dodds v. Richardson,*
    614 F.3d 1185 (10th Cir. 2010) ....................................................6, 7, 8, 9

*Douglass v. Garden City Community College,*
    652 F. Supp. 3d 1329 (D. Kan. 2023)..........................................................1, 9

*Estate of Beaufort v. Mesa County, Colo.,*
    35 F.4th 1248 (10th Cir. 2022) ......................................................................2

*Flanagan v. Munger,*
    890 F.2d 1557 ...........................................................................................12

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006).............................................................1, 10, 12, 17

*Guiterrez v. Cobos,*
    841 F.3d 895 (10th Cir. 2016) ...................................................................15

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)....................................................................................14

*Henderson v. Inter-Chem Coal Co.,*
    41 F.3d 567 (10th Cir. 1994) .......................................................................2

*Heffernan v. City of Paterson,*
    578 U.S. 266 (2016)....................................................................................15

*Johnson v. Martin,*
    195 F.3d 1208 (10th Cir. 1999) ...................................................................6

*Keith v. Koerner,*
    843 F.3d 833 (10th Cir. 2016) .....................................................................9

*Koch v. City of Hutchinson,*
    847 F.2d 1436 (10th Cir. 1988) .................................................................12

*Knopf v. Williams,*
    884 F.3d 939 (10th Cir. 2018) .............................................................14, 15

*Lawmaster v. Ward,*
    125 F.3d 1341 (10th Cir. 1997) ...................................................................3

iii

*Lazy S Ranch Props. v. Valero Terminaling & Dist. Co.,*
    92 F.4th 1189 (10th Cir. 2024) ........................................................................ 2

*Leverington v. City of Colo. Springs,*
    643 F.3d 719 (10th Cir. 2011) ........................................................................ 12

*Lighton v. Univ. of Utah,*
    209 F.3d 1213 (10th Cir. 2000) ........................................................... 12, 13, 14

*Martinez v. Carson,*
    697 F.3d 1252 .................................................................................................. 7, 8

*McCook v. Springer School District,*
    44 Fed. App'x 896 (10th Cir. 2002) ............................................................... 1, 9

*Mitchell v. City of Moore,*
    218 F.3d 1190 (10th Cir. 2000) .......................................................................... 3

*Mitchell v. Maynard,*
    80 F.3d 1433 (10th Cir. 1996) ........................................................................... 5

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977) ......................................................................................... 12

*Nieves v. Bartlett,*
    587 U.S. 391 ....................................................................................................... 8

*Norwood v. United Postal Service, Inc.,*
    57 4th 779 (10th Cir. 2023) ................................................................................ 3

*Parker v. Bd. of Regents of Tulsa Jr. Coll.,*
    981 F.2d 1159 (10th Cir. 1992) ................................................................... 13, 14

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ......................................................................................... 14

*Pickering v. Board of Education,*
    391 U.S. 563 (1968) .............................................................................. 10, 12, 13

*Poolaw v. Marcantel,*
    565 F.3d 721 (10th Cir. 2009) ........................................................................... 6

*Riggins v. Goodman,*
    572 F.3d 1101 (10th Circ. 2009) ....................................................................... 2

*Rohrbough v. Univ. of Colo. Hosp. Auth.*,
    596 F.3d 741 (10th Cir. 2010) ............................................................10, 11, 12

*Schneider v. City of Grand Junction Police Dep't*,
    717 F.3d 760 (10th Cir. 2013) ......................................................................6, 9

*Scott v. Harris*,
    550 U.S. 372 (2007) ...........................................................................................3

*Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*,
    779 F.3d 1141 (10th Cir. 2015) ..........................................................10, 11, 12

*Serna v. Colorado Dept. of Corrections*,
    455 F.3d 1146 (10th Cir. 2006) ........................................................................6

*Smith v. Freil*,
    2006 WL 620875, *582 (10th Cir. March 14, 2006) ......................................5

*Snell v. Tunnell*,
    920 F.2d 673 (10th Cir. 1990) ......................................................................7, 8

*T.D. v. Patton*,
    868 F.3d 1209 (10th Cir. 2017) ......................................................................15

*Thomas v. City of Blanchard*,
    548 F.3d 1317 (10th Cir. 2008) ................................................................10, 11

*Trant v. Oklahoma*,
    754 F.3d 1158 (10th Cir. 2014) ......................................................................12

*Trask v. Franco*,
    446 F.3d 1036 (10th Cir. 2006) ........................................................................7

*Tufaro v. Oklahoma ex rel. Board of Regents of University of Oklahoma*,
    107 F.4th 1121 (10th Cir. 2024) .....................................................................10

*White v. Pauly*,
    580 U.S. 73 (2017) ...........................................................................................15

*Woodward v. City of Worland*,
    977 F.2d 1392 (10th Cir. 1992) ........................................................................6

*Wright v. Rasmussen*,
    No. 17-CV-159-JHP, 2018 WL 4832356, *3 (E.D. Okla. Oct. 4, 2018) ...........6

**<u>Statutes</u>**

42 U.S.C. §1983...................................................................................................1. 5, 8, 17

**<u>Court Rules</u>**

Fed. R. CIV. P. 56.......................................................................................................1, 2

Defendants, Ryan Walters ("Walters") and Matt Langston ("Langston") (collectively, "Defendants"), respectfully request that this Court grant summary judgment in favor of Defendants, and against Cheryl McGee ("Plaintiff or "McGee") pursuant to Federal Rule of Civil Procedure 56 based upon the undisputed facts present below on Defendants' claim of qualified immunity.

## INTRODUCTION

Plaintiff Cheryl McGee asserts a claim under 42 U.S.C. § 1983 for violation of her First Amendment rights, alleging that Defendants Ryan Walters and Matt Langston retaliated against her by terminating her employment because they believed that she had leaked internal OSDE emails to the media. The undisputed record demonstrates that Walters and Langston neither made nor approved the decision to terminate Plaintiff.  Moreover, and critically, Plaintiff resigned hours before OSDE transmitted any termination notice to her.

The law is clear that a First Amendment retaliation claim fails absent proof of retaliatory animus. *See McCook v. Springer School District*, 44 F. App'x 896, 905 (10th Cir. 2002) (requiring evidence of intent beyond timing); *Douglass v. Garden City Community College*, 652 F. Supp. 3d 1329, 1347 (D. Kan. 2023) (same). Plaintiff cannot meet this burden here as the undisputed evidence shows that Walters and Langston neither initiated nor approved her termination.

Even if Plaintiff's allegations regarding her termination were true, and there is no record evidence supporting her contentions, her claim still fails as a matter of law. Plaintiff's perceived disclosure involved internal confidentiality and media-handling directives, matters within Plaintiff's official duties and of no public concern. Under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and controlling Tenth Circuit authority, such speech is not protected.

1

In light of these undisputed facts and clear law, Defendants are also entitled to qualified immunity and summary judgment should be granted in their favor on that basis.

### SUMMARY JUDGMENT STANDARD

As noted by the Tenth Circuit, the standards for summary judgment are different for claims of qualified immunity:

> When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must demonstrate on the facts alleged that (1) the defendant's actions violated his or her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment – showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1239 (10th Cir. 2018).

*Estate of Beaufort v. Mesa County, Colo.*, 35 F.4th 1248, 1261-62 (10th Cir. 2022) (select citations omitted). As set forth below, Plaintiff cannot meet her burden.

That said, the traditional standards are well known: summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Lazy S. Ranch Props. v. Valero Terminaling & Dist. Co.*, 92 F.4th 1189, 1198 (10th Cir. 2024).

In order to avoid summary judgment, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *In re Grandote Country Club Co.*, 252 F.3d 1146, 1150 (10th Cir. 2001) (quotations and citation omitted); *see also Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). An issue of material fact is genuine if the jury could return a verdict for the nonmoving party. *Henderson*, *supra*, 41 F.3d at 569 (quotations and citation omitted).

In establishing that there is a genuine issue for trial, a party must "set forth facts that would be admissible in evidence in the event of trial from which a rational jury could find for [him or her]." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000). In order to accomplish this, the specific facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). But "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmoving party presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997) (citation omitted). If the nonmoving party fails to present facts establishing a genuine issue for trial, the moving party is entitled to summary judgment.

A court is only required to "view facts in the light most favorable to the nonmoving party…if a genuine dispute exits as to those facts." *Norwood v. United Postal Service, Inc.*, 57 4th 779, 790 (10th Cir. 2023). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Lastly, "[w]hen a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right. Reynolds. If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Cortez v. McCauley*, 748 F.3d 1108, 1114 (10th Cir. 2007).

3

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Plaintiff Cheryl McGee was employed by the Oklahoma State Department of Education (OSDE) from August 2019 until May 25, 2023, serving most recently as Executive Director of School-Based Mental Health. (Exhibit 1, *Declaration of Ryan Walters* , at 1).

2.      Defendant Ryan Walters served as Oklahoma's elected Superintendent of Public Instruction since January 2023. (Exh. 1, at 1).

3.      Defendant Matt Langston served as Chief Policy Advisor of Administrative Services; he had no authority to terminate employees. (Exhibit 2, *Declaration of Matt Langston*, at 1).

4.      Since 2019, OSDE Policy Number OSDE-2019-080 has required that all media/public inquiries be routed to the Communications Division or designated leadership, prohibited unauthorized public comments purporting to speak for the agency, and warned that violations could result in discipline up to and including termination. (Exhibit 3, *Media Contact Policy*). Policies also required confidentiality, restricted disclosure of confidential information to those with a "need to know," and directed media and Open Records inquiries to Legal Services. (Exhibit 4, *OSDE Employee Handbook*; Exhibit 9, *Confidentiality Agreement*).

5.      On May 25, 2023, Langston disseminated internal emails reiterating that internal documents and discussions were to be handled confidentially and warning that any employee leaking information to the press would face immediate termination. (Exhibit 5, *Representative OSDE emails (May 25, 2023, approx. 8:00–8:10 AM)*).

8.      On May 25, 2023, at 2:49 PM, Plaintiff emailed OSDE leadership and Human Resources stating: "Let this serve as my official resignation effective June 9th from my role within the Office of Student Support," and attached a formal resignation letter likewise stating she was

4

"formally resign[ing] … effective June 9, 2023." (Exhibit 6, *Email and attached resignation letter*).

9.      At 5:13 PM that same day, OSDE's Chief Human Resources Officer, Susan Miller, emailed Plaintiff attaching a termination letter dated May 25, 2023, stating her employment was "terminated effective immediately." The letter stated that the decision had been made "due to a breach of confidentiality by leaking internal agency emails to the media," referencing OSDE's media policy and prior email warning. (Exhibit 7, *Termination Letter*; Exhibit 8, *Transmittal Email*; Exhibit 9, *Declaration of Susan Miller*).

10.     That evening, Plaintiff replied that she did "not accept this letter of termination" because she had "officially resigned at 2:49 pm via email and then submitted [her] resignation into workday directly after and prior to HR releasing a termination notice," and denied leaking information to the media. (Exhibit 8, *Plaintiff's email response*).

11.     OSDE Chief Human Resources Officer Susan Miller was directed to terminate Ms. McGee by Jenna Thomas, then OSDE Chief Operating Officer. (Exh. 9).

12.     Ms. Miller never discussed Plaintiff's termination with Defendants Walters or Langston prior to Plaintiff's termination. (Exh. 9).

13.     Defendants did not approve Plaintiff's termination, did not recommend her termination, or participate in the termination decision. (Exh. 1; Exh. 2).

## ARGUMENT AND AUTHORITIES

**I.      Individual Liability Requires Personal Participation, which is Absent.**

"Personal participation is an essential allegation in a § 1983 claim," and respondeat superior is unavailable. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Smith v. Freil*, 170 F. App'x 580, 582 (10th Cir. 2006). In the Tenth Circuit, supervisory liability is strictly limited

to cases where the plaintiff proves an "affirmative link" between the supervisor and the alleged constitutional deprivation, comprising three elements: "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). "Negligence—even gross negligence—is insufficient;" liability demands the supervisor's own culpable conduct and a proximate causal nexus. *Id.* at 1211 (J. Tymkovich, concurring); *See also Wright v. Rasmussen*, No. 17-CV-159-JHP, 2018 WL 4832356, *3 (E.D. Okla. Oct. 4, 2018) (citing *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489 (10th Cir. 1990)).

Summary judgment should be granted when the record shows no personal participation in the challenged adverse action—for example, where the official did not direct or approve the purported constitutional deprivation, learned of it only after the fact, or merely occupied a supervisory role. *Johnson v. Martin*, 195 F.3d 1208, 1219 (10th Cir. 1999); *Woodward v. City of Worland*, 977 F.2d 1392, 1398-99 (10th Cir. 1992) (collecting cases); *Dodds*, 614 F.3d at 1199; *Castillo v. Bobelu*, 1 F. Supp. 3d 1190, 1209–12 (W.D. Okla. 2014). Mere supervisory status or generalized authority does not suffice. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1153 (10th Cir. 2006).

Direct, on-scene action is not required, but the plaintiff must show that the defendant "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," and liability extends only to harms proximately caused by that conduct. *Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009); *Dodds*, 614 F.3d at 1200.

A. Defendants Were Not Personally Involved in Plaintiff's Termination.

The undisputed record establishes that OSDE's Chief Operating Officer, Jenna Thomas, directed OSDE's Chief Human Resources Officer, Susan Miller, to issue the termination letter, and Miller carried out that directive. (SUMF No. 9, 11). Miller did not discuss Plaintiff's termination

with either Walters or Langston before the termination letter issued. (SUMF No. 11-13). Walters neither made nor approved the termination decision and did not participate in it. (SUMF No. 12-13). *Bointy v. Oklahoma*, No. CIV-23-1002-SLP, 2025 U.S. Dist. LEXIS 118441, at *3 (W.D. Okla. June 23, 2025). Likewise, Langston had no authority to terminate employees and did not participate in Plaintiff's termination decision. (SUMF No. 3, 12-13). There has been no "personal involvement" as is necessary under *Dodds*. *Dodds*, 614 F.3d at 1195–96, 1199-1200; *Serna*, 455 F.3d at 1153.

    <u>B. Defendants Did Not Cause Plaintiff's Termination.</u>

    Any official who 'causes' a citizen to be deprived of her constitutional rights can be held liable; the requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (citing *Conner v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir. 1988)). Defendant's acts must be both a but-for and a proximate cause of the constitutional deprivation, and, as in other legal contexts, proximate cause is lacking when there is an intervening, superseding cause of the violation. *Trask v. Franco*, 446 F.3d 1036, 1046-47 (10th Cir. 2006) ("conduct was not the proximate cause of [plaintiff's] alleged injuries if another act intervened and superseded the officer's liability for subsequent events"); *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012).

    Here, intervening decisionmakers – Thomas and Miller – made and executed the termination independently. Neither Defendant played any role in initiating or influencing that decision. (SUMF No. 9, 11-13). Plaintiff will contend that Langston's May 25, 2023, internal emails caused her termination, but the record contains no evidence that Thomas relied on Langston's emails in deciding to terminate Plaintiff or that Langston recommended or approved

7

any adverse action. There is no evidence in this record that either Defendant proximately caused Plaintiff's termination (and alleged constitutional deprivation), and Defendants are entitled to summary judgment accordingly. *See Snell*, 920 F.2d at 700; *Trask*, 446 F.3d at 1046; *Martinez*, 697 F.3d at 1255.

<u>C. Defendants Lacked Any Culpable State of Mind.</u>

Supervisory liability under § 1983 requires proof that the defendant-supervisor "acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199. Here, the state of mind required to establish Plaintiff's First Amendment retaliation claim is retaliatory animus or motive. *Nieves v. Bartlett*, 587 U.S. 391, 398-99. Defendants, who had no knowledge of or participation in Plaintiff's termination obviously did not hold any particular retaliatory animus with respect to Plaintiff's termination. (SUMF No. 9, 11-13).

Even if this Court were to hold that a less stringent deliberate indifference standard applied, Defendants would still be entitled to summary judgment. Deliberate indifference is a "stringent standard of fault" requiring actual or constructive knowledge of a substantial risk that a particular constitutional deprivation may occur and the official's conscious disregard of that risk. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Schneider*, 717 F.3d at 768–69.

The undisputed record forecloses any finding that either Defendant acted with deliberate indifference in their supervisory capacities. Walters neither made nor approved the termination decision and had no involvement in its execution: OSDE Chief Human Resources Officer Susan Miller avers that she was directed to terminate Plaintiff by Jenna Thomas and that she never discussed the termination with Walters before issuing the letter. (SUMF No. 9, 11-13). Walters did not initiate, recommend, or influence the decision. (*Id.*).

**Commented [WJ1]:** Please insert a case here. Doesn't have to be in context of supervisor liability, just something retaliatory motive or animus being an element of this kind of constitutional violation.

These facts negate any inference that Walters knowingly created or consciously disregarded a substantial risk of constitutional harm to Plaintiff. In *Bointy v. Oklahoma,* this Court held, under similar facts, that Defendant could not be held liable in his supervisory capacity for plaintiff's termination, in which he took no part. No. CIV-23-1002-SLP, 2025 U.S. Dist. LEXIS 118441, at *18 (W.D. Okla. June 23, 2025). The Court in *Bointy* further noted that there was no evidence of a custom or practice of deploying OSDE's confidentiality and media policies in manner that violated OSDE employees' First Amendment rights. *Id.* The same is true here. There is no evidence in the record that either Defendant was somehow on notice that any policy, practice, or custom of the OSDE would result in violation of Plaintiff's First Amendment rights.

It is also undisputed that Langston did not participate directly in Plaintiff's termination – again, the termination was directed by Thomas and carried out by Miller. (SUMF No. 9, 11-13). Langston lacked authority to terminate Plaintiff and did not supervise those who did have such authority. (SUMF No. 2). Plaintiff will likely claim that Langston's May 25, 2023, email caused her termination. But the record contains no evidence that Thomas relied on Langston's email as a basis to terminate Plaintiff or that Langston recommended or approved the specific adverse action. There is nothing in the record establishing either that Langston participated in Plaintiff's termination, caused her termination, or was deliberately indifferent to any constitutional harm. *Keith*, 843 F.3d 833, 838; *Dodds*, 614 F.3d at 1199–1201; *Schneider*, 717 F.3d at 769.

Under *Dodds*, Plaintiff must establish an "affirmative link" between Defendants and her alleged constitutional deprivation by demonstrating (1) personal involvement, (2) causation, and (3) culpable state of mind. On this record, Plaintiff cannot establish any such "affirmative link", and summary judgment should be granted for both Defendants.

9

II.     **Plaintiff Did Not Engage in Protected Speech.**

A public-employee speech claim is governed by the *Garcetti/Pickering* five-part test: (1) whether the speech was made pursuant to the employee's official duties; (2) whether it addressed a matter of public concern; (3) if so, whether the employee's interest outweighs the government employer's interest in efficiency; (4) whether the protected speech was a motivating factor in the adverse employment action; (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. *See Garcetti*, 547 U.S. at 418–21; *Tufaro v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 107 F.4th 1121, 1137–38 (10th Cir. 2024). If the employee spoke pursuant to official duties, there is no First Amendment protection. *Garcetti*, 547 U.S. at 421.

The Tenth Circuit applies a practical, case-by-case inquiry that looks to both the content of the speech and the employee's chosen audience to determine whether the communication "was commissioned by the employer" and "reasonably contributes to or facilitates the employee's performance of the official duty." *Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*, 779 F.3d 1141, 1151 (10th Cir. 2015); *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747–50 (10th Cir. 2010). The Circuit takes a broad view of what qualifies as speech "pursuant to" official duties and focuses on the realities of the employment relationship rather than formal job descriptions. *See Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008).

This is an unusual case because Plaintiff's perceived speech is ill-defined both with respect to content of the speech, as well as any other important aspect of said perceived speech. Plaintiff has alleged that she was fired because Defendants incorrectly thought that she had circulated an internal email that reiterated OSDE's confidentiality and media policies. In actuality, the undisputed record in this case establishes that others, who are not Defendants in this case, were responsible for Plaintiff's firing and, because of this (and because Plaintiff has declined to conduct

10

discovery with respect to the actual decisionmakers), there is frankly little to no evidence in the record as to why Plaintiff was terminated.  All that is known is that the letter terminating Plaintiff states that the "decision was made due to a breach of confidentiality by leaking internal agency emails to the media." (Exh. 7). There is nothing in the record establishing that Plaintiff was terminated for protected speech; summary judgment follows from Plaintiff's failure to carry this burden.

Even if this Court were to go along with Plaintiff and assume that Plaintiff was fired for circulating a particular email from Defendant Langston on May 25, 2023, Defendants would still be entitled to summary judgment because the unauthorized disclosure of said email to the media, which would have been violative of established OSDE policy, was not protected speech. Plaintiff served as OSDE's Executive Director of School-Based Mental Health. OSDE's long-standing policies required confidentiality of internal documents, restricted disclosure to those with a "need to know," and mandated that media/public inquiries be routed to the Communications Division or Legal Services, with discipline (up to termination) for violations.

The Langston email cited by Plaintiff concerned the administration of OSDE programs, the proper internal processing of communications, and the appropriate official means by which the OSDE communicates with the media. The email's audience was intra-agency personnel, and the purpose was to ensure consistent compliance with OSDE's media and confidentiality protocols. Under the Tenth Circuit's practical test, such communications reasonably contribute to or facilitate the Executive Director's performance of official duties: safeguarding program information, coordinating with Legal/Communications, and ensuring that external inquiries are handled through designated channels. See *Rohrbough*, 596 F.3d at 747–50; *Seifert*, 779 F.3d at 1151; *Thomas*, 548 F.3d at 1324. Accordingly, any handling, discussion, or perceived disclosure of these internal

11

directives "owes its existence" to Plaintiff's OSDE responsibilities and is employee speech at *Garcetti*'s threshold, not speech as a private citizen. See *Garcetti*, 547 U.S. at 418–22; *Rohrbough*, 596 F.3d at 747–50; *Seifert*, 779 F.3d at 1151.

Moreover, the "perceived" content purportedly at issue – the Langston email – is an internal, intra-office matter not inherently of public concern under *Leverington*. *See Leverington v. City of Colo. Springs*, 643 F.3d 719, 727–30 (10th Cir. 2011); *see also Flanagan v. Munger*, 890 F.2d 1557, 1563 (10th Cir. 1989) (stating that "In these cases, we construe "public concern" very narrowly, limiting First Amendment protection to statements made by public employees which "*sufficiently inform [an] issue* " of public concern."). Media interest cannot transform internal policy enforcement into public-concern speech. *See Koch v. City of Hutchinson*, 847 F.2d 1436, 1448–49 (10th Cir. 1988) (en banc). Because Plaintiff cannot satisfy steps one and two as a matter of law, her claim fails.

Under element five of *Garcetti/Pickering*, an employer may avoid liability by showing it would have taken the same action in the absence of protected speech. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Trant v. Oklahoma*, 754 F.3d 1158, 1167–68 (10th Cir. 2014). The undisputed record establishes an independent bases satisfying *Mt. Healthy*. Plaintiff's voluntary resignation, effective June 9, 2023, preceded HR's transmittal of any termination letter. By Plaintiff's own statement, she chose resignation and rejected the termination notice. A voluntarily effectuated resignation would have resulted in the same separation outcome regardless of any alleged protected activity. *See Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222–23 (10th Cir. 2000); *Allen v. Salt Lake County*, 713 F. Supp. 3d 1171, 1189 (D. Utah 2024).

12

**III.    Plaintiff's Voluntary Resignation Before Any Termination Precludes Her Claim.**

A First Amendment retaliation claim fails absent an adverse employment action. *See Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005) ("Implicit in the *Pickering* test is a requirement that the public employer have taken some adverse employment action against the employee.") (quoting *Belcher v. City of McAlester, Oklahoma*, 324 F.3d 1203, 1220 (10th Cir. 2003)).

The undisputed record establishes that Plaintiff resigned by way of a 2:49 p.m. May 25, 2023 email stating: "Let this serve as my official resignation effective June 9th," with an attached letter "formally" resigning effective June 9, 2023, and a contemporaneous Workday submission—well before OSDE's 5:13 p.m. HR email transmitting a termination letter later that day. (SUMF No. 8, 9). Plaintiff immediately told HR that she did "not accept this letter of termination" because she had "officially resigned at 2:49 pm … prior to HR releasing a termination notice," again confirming the sequencing and her own position that her resignation governed. (SUMF No. 10).

Under Tenth Circuit authority, a voluntary resignation is not an adverse action; courts deem a resignation involuntary only if working conditions are so intolerable that a reasonable person would feel compelled to resign or if the resignation was the product of coercion or deception. *See Lighton*, 209 F.3d at 1222; *Parker v. Bd. of Regents of Tulsa Jr. Coll.*, 981 F.2d 1159, 1162 (10th Cir. 1992). The Tenth Circuit applies an objective "reasonable person" test and evaluates the totality of the circumstances, considering whether the employee had alternatives to resignation, understood the choice, had reasonable time to decide, and could select the effective resignation date. *Lighton*, 209 F.3d at 1222; *Parker*, 981 F.2d at 1162. It further holds that even a choice between resignation and termination does not render a resignation involuntary unless the employer lacked good cause to believe grounds for termination existed. *Parker*, 981 F.2d at 1162–63.

13

Applying these standards, Plaintiff's own contemporaneous writings show a clear, voluntary resignation with a chosen effective date (June 9), communicated in writing and through the employer's designated system—confirming she selected the terms and timing of her departure. *See Lighton*, 209 F.3d at 1221–27; *Parker*, 981 F.2d at 1162–66. She then expressly rejected the later HR letter as superseded by her prior resignation, underscoring that OSDE's after-the-fact notice did not effectuate her separation. *See Baca*, 398 F.3d at 1220; *See also Daugherty v. Richardson*, No. CV 98-1573 JP/LFG, 2000 WL 36739572, at *9 (D.N.M. Dec. 5, 2000). There is no record evidence of coercion, duress, deception, or objectively intolerable conditions sufficient to vitiate voluntariness under *Lighton* and *Parker*; to the contrary, Plaintiff framed her departure as a considered, values-based decision with two weeks' notice, consistent with OSDE policy. *See Lighton*, 209 F.3d at 1221–27; *Parker*, 981 F.2d at 1162–66.

The Tenth Circuit's decisions in *Lighton* and *Parker* confirm summary judgment is appropriate where, as here, an employee's own actions and documentation establish a voluntary resignation preceding any purported termination. *See Lighton*, 209 F.3d at 1221–27; *Parker*, 981 F.2d at 1162–66. Because Plaintiff cannot show an adverse employment action as a matter of law on this record, her First Amendment retaliation claim fails at the fourth *Garcetti/Pickering* step.

**IV.    Defendants are Entitled to Qualified Immunity.**

"Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018)

14

(citing *Guiterrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016)). "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Id.* (citing *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017)). Here, Plaintiff cannot satisfy either prong.

> A. No Constitutional Violation Occurred.

The Tenth Circuit "recognize[s] a First Amendment right against retaliation for perceived speech." *Avant v. Doke*, No. 21-7031, 2022 WL 2255699, at *6 (10th Cir. June 23, 2022). As established in *Heffernan*, the First Amendment inquiry turns on the employer's motive, not whether the employee actually spoke. *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272–74 (2016). Plaintiff's claim fails under *Heffernan* because the undisputed record shows neither Walters nor Langston had any involvement in Plaintiff's termination or any knowledge or belief regarding whether any purported speech occurred. There is no evidence of retaliatory motive, and no basis to infer that Defendants acted due to a belief about any perceived protected activity. *See also*, §§ I-III, *supra*. Defendants are entitled to Qualified Immunity as a matter of law.

> B. No Clearly Established Law was Violated.

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf*, 884 F.3d 939, 944 (citing *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)). "To be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "Although there need not be a 'case directly on point,'" "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it....'" *Id.* (quoting

*City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015)) (internal citations omitted).

Given the nascent, uncertain nature of case law regarding perceived speech, and whether perceived speech can be considered to relate to a "matter of public interest," there is no clearly established law applicable to the facts of this case. *Avant v. Doke*, 104 F.4th 203, 208 (10th Cir. 2024). In *Avant*, the Tenth Circuit addressed whether the law clearly established that an employee's perceived speech could constitute a matter of public concern. *Id.* at 208. The Court held that qualified immunity applied because "[a] reasonable official would have lacked meaningful guidance from the case law," because "virtually all of the cases in this area involve actual speech rather than perceived speech." *Id.* The Tenth Circuit's reasoning, published recently as it was, still holds true.

The Court further held that, "a public official wouldn't violate the First Amendment by firing an employee for a reasonable—but mistaken—belief that the employee's speech had involved personal matters rather than matters of public concern." *Id.* The Tenth Circuit held that the *Avant* defendant was entitled to qualified immunity because he "lacked any meaningful guidance from the case law" regarding the perceived speech and whether, given the "content…context and purpose" of the perceived speech, it concerned a matter of public interest. *Id.* at 208-209.

Here, the record demonstrates that Defendants were not aware of any alleged speech or the termination decision. But even if Defendants had directed Plaintiff's termination (and they did not), the law was not clearly established that terminating an employee based on a perceived unauthorized disclosure that violated longstanding internal confidentiality / media policies violated the First Amendment. Nor would it be unreasonable for an official to believe that, under all of the

circumstances of this case, Plaintiff's disclosures involved internal "personal matters" rather than any matter of public concern.

**CONCLUSION**

The undisputed record forecloses Plaintiff's § 1983 claim as a matter of law. Walters and Langston did not make, approve, or direct the termination decision; OSDE's Chief Operating Officer and Human Resources Director executed that decision independently. Plaintiff has failed to develop a factual record with regard to the reasons for her termination, and she has accordingly failed to carry her burden in this case. Even were this Court to take Plaintiff's word as to the reason for her termination, her purported speech (circulating an internal email about communications / media policy) concerned matters within Plaintiff's official duties and not of public concern under *Garcetti* and controlling Tenth Circuit precedent. Plaintiff voluntarily resigned before any termination notice issued, eliminating the adverse-action element. Absent personal participation, causation, or protected speech, no constitutional violation exists.

Even if, despite all of the above, Plaintiff could establish that Defendants violated her constitutional rights, the law was not clearly established that terminating an employee based on perceived leaking of internal policy emails violated the First Amendment, or that non-decisionmakers could incur individual liability. Defendants are entitled to qualified immunity. Defendants respectfully request that the Court grant summary judgment in their favor, enter judgment for Defendants Walters and Langston, and award such other and further relief as the Court deems just.

17

Respectfully submitted,

/s/ W. Caleb Jones
**Joel L. Wohlgemuth**, OBA #9811
**Chad J. Kutmas**, OBA #19505
**W. Caleb Jones**, OBA #33541
**NORMAN WOHLGEMUTH, LLP**
401 S. Boston Avenue
Suite 3200 Mid-Continent Building
Tulsa, OK 74103
(918) 583-7571 (Telephone)
(918) 584-7846 (Facsímile)
JWohlgemuth@NWLawOK.com
CKutmas@NWLawOK.com
WJones@NWLawOK.com

*Attorneys for Ryan Walters*
*and Matt Langston*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of January, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in the case.

/s/W. Caleb Jones

18